DECISION AND JOURNAL ENTRY
A jury in the Summit County Court of Common Pleas found Lee E. Hardy guilty of committing burglary, a fourth degree felony, in violation of R.C. 2911.12. Hardy has appealed from his conviction.
Hardy has assigned as error that (1) the verdict was against the manifest weight of the evidence; and (2) he was entitled to a judgment of acquittal pursuant to Crim.R. 29.[1] We overrule both assignments of error and affirm the judgment of the trial court.
 I
On October 12, 1998, after Anita Williams put her three sons to bed at 10:00 p.m., she checked to make sure all of her doors and windows were locked. She checked them a second time just before going to bed at approximately 11:00 p.m. Unfortunately, she was unable to lock one of her windows because the lock was broken. She fell asleep without turning off the TV or the lights in the hallway or the bathroom.
She was awakened at approximately 2:15 a.m., and looked up into the face of an unknown male standing at the head of her bed. Afraid that he might rape her, Williams sat up immediately, slid away from the intruder to the end of her bed, and asked him, "Who are you? What are you doing in my house?" He responded, "You know who I am. Why are you tripping?" The intruder sat down, and then reclined, on Williams' bed. The intruder remained in her room for approximately forty-five minutes. During this time, Williams spoke with him and watched him by the lights from the TV, hallway, and bathroom. She observed his general physical characteristics, his clothing, and a distinctive cross he was wearing.
While he was in her room, Williams felt trapped by him, and was afraid that he would rape her. Williams ultimately informed the intruder that she had a boyfriend who "was on his way home from work right now," and that if the intruder "didn't leave, something was going to happen." At some point, the intruder asked Williams if she wanted him to leave, to which she responded, "Yes."[2] The intruder subsequently walked out of her room, and left the apartment by the back door.
After he left, Williams explored her apartment and found that the unlocked window and the screen were raised. Williams called the Akron Police Department, who arrived within a few minutes of the intruder's departure. According to Officer Steven Sims, Williams described the intruder as a "short, stocky [black] male, about five-six, five-seven, approximately 200 pounds." She also told Officer Sims that the intruder had facial hair. According to Officer Sims, she described the intruder's clothing as a "dark sweatsuit, dark navy blue sweatsuit, tennis shoes, [and] a dark blue hat that was turned around."
Officer Mike R. Yohe, who initially inspected the outside of the apartment, testified that the dusty surface of the external windowsill had been disturbed and that it, "It looked like someone had possibly climbed through that window." Officer Sims testified as to the inside appearance of the window. According to Officer Sims, "The blinds were and curtains were over the edge of the couch * * * You could tell they had been rummaged through." He concurred with Officer Yohe's description of the external sill.
After finishing their report, the officers left at approximately 3:40 a.m. Approximately five minutes later Officer Yohe returned and asked Williams to go with him to the Wooster library parking lot to identify an individual they had apprehended. Williams positively identified Hardy as the individual who had been standing over her in her bedroom when she was awakened approximately an hour and a half earlier. Williams described the identification as having taken place in an unlit parking light by the light from a police flashlight. Williams testified that she identified Hardy from a distance of about ten to fifteen feet. When asked to describe the distance in reference to the courtroom objects the distance from which she said she identified Hardy more closely matched the police officer's estimate of forty to fifty feet.[3] Both officers testified that the parking lot was used for identification because it was well lit, and that they supplemented the lighting with their spotlight. Williams identified Hardy in the courtroom.
Officer Michael Yohe testified that when Hardy was apprehended that he had what "seemed to be the same type of chalk" on the midsection of his sweatsuit as "was found on the victim's windowsill." The photographs of Hardy, taken shortly after his arrest, show him wearing a dark sweat pants, a dark sweatshirt, a slightly askew dark cap, white tennis shoes, and a gold cross. A vertical chalky white streak is visible across his midsection in these photographs. He has a beard and moustache, and appears to be short and stocky.
 II
Although Hardy does not directly challenge the judgment entries of conviction and sentence, his arguments are premised on the understanding that he was convicted of violating R.C.2911.12(A)(1). The State, in response, has asserted that Hardy's conviction for violation of R.C. 2911.12(A)(4) was appropriate. Because of this discrepancy, as a preliminary matter we must address the judgment entries of conviction and sentence. The judgment entry of conviction indicates that the jury found Hardy "GUILTY of the lesser included offense of BURGLARY, as contained in 1 Count of the Indictment, without specification, which offense occurred on or about October 13, 1998, Ohio Revised Code Section2911.12(A)(1), a felony of the fourth (4th) degree." The judgment entry of sentence also recites that Hardy was convicted of "the crime of BURGLARY, Ohio Revised Code 2911.12(A)(1), a felony of the fourth (4th) degree." Burglary, as defined in R.C.2911.12(A)(1), is a felony of the second degree.[4] R.C.2911.12(C).
The statutory designation given the offense of which Hardy was convicted is inconsistent with the remainder of the judgment entries of conviction and sentence. Criminal judgments that contain errors that result from oversight or omission may be corrected at any time. Crim.R. 36. In addition, pursuant to App.R. 12(B), an appellate court has the power to modify judgments when it "determines that the judgment or final order of the trial court should be modified as a matter of law [and] it shall enter its judgment accordingly." See, generally, State v. Young (Sept. 28, 1992), Meigs App. No. 461, unreported.
A jury convicted Hardy. Because the judgment entries reflecting that verdict are ambiguous, we review the record to determine what offense, if any, the jury actually found Hardy to have committed. The form of burglary for which Hardy was indicted includes the element that he entered the structure "with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense." As relevant to this case, R.C. 2911.12(A)(4) defines burglary as the same offense, absent the purpose to commit any criminal offense.[5]
The court directed the jury to determine whether Hardy had committed all the elements of burglary, as defined in the indictment. It instructed the jury using essentially the language contained in R.C. 2911.12(A)(1), which includes the element that the offender had a purpose to commit a crime therein when he entered the structure. To record the results of its deliberations the jury was given a form containing the following:
 We, the Jury in this case * * * find the Defendant, Lee E. Hardy [*]_____________ of the offense of Burglary as contained in Count One of the indictment.
 We further find the defendant [**]__________ trespass with the purpose to commit in the structure or separately occupied portion any criminal offense.
[*] Insert in ink either "Guilty" or "Not Guilty."
[**] Insert in ink either "Did' or "Did not."
The jury was told that if it found "the State has failed to prove beyond a reasonable doubt any one of the essential elements of the offense of burglary" it was to mark "Not Guilty" in the first blank and its deliberations were completed. If, however, the jury found that Hardy had committed "all of the essential elements of the offense of burglary as charged in Count One of the indictment" it was to mark "Guilty" in the first blank on the verdict form. Once the jury found Hardy guilty "of the offense of burglary as contained in Count One of the indictment" it was to continue deliberating until it determined whether Hardy had the purpose to commit a criminal offense within Williams' home. Once it had resolved the matter, it was to enter either "Did" or "Did Not" in the second blank on the verdict form. Ultimately, the jury entered "Guilty" in the first blank, and "Did Not" in the second blank.
Partway through its deliberations, the jury realized that if it found Hardy guilty as indicted the second question was redundant. It asked, "What is purpose of option in ¶ 2 if offense of Burglary includes purpose to commit criminal offense. Please distinguish definitions." The court explained that it "instructed you on the [version of burglary] in the indictment and then gave you the option for your finding based upon the evidence presented by the prosecution in regard to the specific issue" of purpose to commit a criminal offense therein. Because burglary, as indicted, includes a purpose to commit a criminal offense, this clarification does not reconcile the responses ultimately given by the jury.
The court also indicated, however, that,
 [Y]ou need to understand that the verdict form that you've been provided allows for you to make a finding of guilty of burglary with or without a finding that he did or did not have the intent to commit a criminal offense at the time. If you were to find that the defendant did not have that intent, it would still be the offense of burglary, but a different classification. If you find that he's guilty but he did have that intent, it is also burglary it's the other classification.
 Both the state and Hardy saw the jury form, were present during the jury instructions, heard the jury question, and heard the court's response. In light of the entirety of the exchanges, both parties agreed to the following clarification for the record:
 in the event they fail to make the specific finding in the verdict the offense is classified as a burglary of the fourth degree. If they find guilt on the verdict form, and if they make the finding of — the finding of the specification in the verdict form, then it is as indicted as a felony two.
As noted above, the jury entered "Guilty" in the first blank and "Did Not" in the second blank. Taken at face value, the first response on the jury's verdict form indicates that it found Hardy had committed all of the elements of fourth degree felony burglary and, in addition, that he possessed the intent to commit a crime therein. The jury's second response indicates that he did not possess the intent to commit a crime therein. Omitting the single element on which the jury made contradictory statements, we are left with a jury determination that Hardy committed every element of fourth degree felony burglary. This is consistent with the stipulation by both parties that "if [the jury fails] to make the specific finding in the verdict the offense is classified as a burglary of the fourth degree." It is also consistent with the judgment stating that Hardy had been convicted of the "lesser included offense," which the court described as a felony of the fourth degree.[6]
Finally, his sentence is consistent with a conviction for a fourth degree felony.
Burglary, as a fourth degree felony, is a violation of R.C.2911.12(A)(4). Based on the record, we determine that the jury found Hardy guilty of violating R.C. 2911.12(A)(4). In light of the stipulation by both parties as to the meaning of the jury responses, the inaccurate statutory designation by the trial court appears to have been the result of oversight. The Rules of Criminal Procedure specifically permit the correction of errors of this nature. Crim.R. 36. In order to avoid further confusion arising from the incorrect statutory designation, we modify the judgments of conviction and sentence to indicate that Hardy was convicted of violating R.C. 2911.12(A)(4), not R.C. 2911.12(A)(1).
 Manifest Weight
The Ohio Supreme Court has noted that "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In determining whether this is one of those exceptional cases, we review the entire record, consider the credibility of the witnesses, weigh all the evidence, and make all reasonable inferences. Thompkins, 78 Ohio St.3d at 387. To sustain Hardy's assignment of error this court must find that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Id.
Hardy was convicted of fourth degree felony burglary. In order to convict Hardy, the state was required to establish beyond a reasonable doubt that Hardy trespassed by force, stealth or deception in a permanent or temporary habitation when any person, other than an accomplice, was present or likely to be present. If Hardy knowingly entered, or remained, on the land or premises of Williams without privilege to do so, he committed criminal trespass. See R.C. 2911.21.
As summarized above, Williams testified that she secured her home as best she could, given that one window was not capable of being locked. She was awakened at 2:15 in the morning, by a stranger who was standing over her bed and who remained in her bedroom for approximately forty-five minutes. When she investigated after the intruder left, she discovered that the window with the broken lock, and its screen, had been opened after she went to bed. The police confirmed that the both the window and screen were open, and also testified that the dust on the external windowsill was smeared and that the blinds and curtains were also in disarray.
The jury could reasonably infer from the evidence that the intruder opened the window and entered through it. From that it could have reasonably concluded that the intrusion was by stealth or force. The evidence that the intruder entered Williams' home in the middle of the night, by a means that would not be usual for an invited guest, supports a conclusion that the stranger was not privileged to enter or remain in Williams' home. Particularly when combined with Williams' description of feeling trapped by, and afraid of, the stranger, the jury reasonably concluded that he was there without privilege. Without dispute, Williams was present when the stranger entered her home. Without losing its way, the jury could have determined beyond a reasonable doubt that the stranger entered and remained in Williams home by force or stealth, without privilege to do so, at a time when she was present. Those actions constitute the fourth degree felony of burglary.
Williams described the intruder to the police. Within forty-five minutes of his departure, the police had arrested an individual who matched the description Williams gave them and who was wearing clothing that was consistent with her description of the intruder's clothing. Immediately thereafter, Williams identified Hardy as the intruder she had observed from a distance of no more than the length of her bed for a period of approximately forty-five minutes. Although Williams' description of the identification process varied slightly from that given by the police, all parties testified that there was sufficient light by which Williams could view Hardy to determine that he was the intruder. As additional evidence, the chalky streak on Hardy's sweatshirt is consistent with one that might be found on clothing worn by an individual who slid across a weathered windowsill on his stomach while entering through the window. From the direct and circumstantial evidence, the jury could have determined beyond a reasonable doubt that Hardy was the stranger who burglarized Williams' home.
This is not the exceptional case in which the evidence weigh heavily against the verdict returned by the jury. Hardy is not entitled to a new trial, and his first assignment of error is overruled.
 B. Crim.R. 29
Hardy has asserted that the trial court erred by failing to grant his Crim.R. 29 motion for acquittal at the close of the state's case. "The court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29(A). By definition, a trial court evaluating a Crim.R. 29 motion bases its decision on the sufficiency of the evidence to support a conviction. Necessarily included in this court's determination that the conviction was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 2-4. Hardy's second assignment of error is overruled.
 III
The judgment entries of conviction and sentence are amended to reflect that Hardy was convicted of committing burglary, in violation of 2911.12(A)(4), a felony of the fourth degree. Because his conviction was neither against the manifest weight of the evidence, nor based on insufficient evidence, his assignments of error are overruled. The judgment of the trial court is affirmed, as amended.
Judgment accordingly.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 ________________________________ WILLIAM R. BAIRD, FOR THE COURT.
SLABY, J. and BATCHELDER, J. CONCUR.
[1] Hardy assigned three errors. His second and third assignments of error both asserted that he was entitled to acquittal, pursuant to Crim.R. 29, because there was insufficient evidence for a reasonable person to find that he had committed each element of the offense. Because the second and third assignments of error are indistinguishable we have combined them here.
[2] It is unclear from the transcript which of these two exchanges occurred first.
[3] She described the distance at which identification was made as approximately the distance from witness stand to the first bench.
[4] R.C. 2911.12 defines two versions of burglary as felonies of the second degree. For purposes of this case any reference to burglary, as a second degree felony, should be understood to be a reference to burglary as defined in R.C. 2911.12(A)(1).
[5] R.C. 2911.12(A)(1) does include the possibility that second degree burglary may be committed in a structure that would not constitute fourth degree burglary, since the definition of "occupied structure" includes structures other than "permanent or temporary habitations." See R.C. 2911.12(A)(1), (4); R.C.2909.01(C). When it instructed the jury, the court limited the definition of "occupied structure" to the one contained in R.C.2911.12(A)(4).
[6] Because the question is not before this court, we do not determine whether fourth degree burglary is, in fact, a lesser included offense of second degree burglary.